## FORT WORTH & D. C. RY. CO. v. GRIFFITH.

No. 3386.

Court of Civil Appeals of Texas. Amarillo.

April 9, 1930.

Rehearing Denied April 30, 1930.

352

Carrigan, Britain & King, of Wichita Falls, and Thompson & Barwise and F. B. Walker, all of Fort Worth, for appellant.

Weeks, Morrow, Francis & Hankerson, of Wichita Falls, for appellee.

HALL, C. J.

Griffith sued the appellant railway company, claiming damages for personal injuries in the sum of $25,000, as the result of the negligence of the railway company and its servants. He alleges that while in the service of appellant as a switchman working in the yards at Wichita Falls with a yard crew, of which he was foreman, he sustained injuries to his eyes and which resulted in the loss of his left eye; that the injuries were occasioned by an explosion in the fire box of the engine with which he was working, causing the engine to emit dirt, smoke, sand, fumes, and gases, striking him in the face and particularly in his left eye; that at the time of the explosion he was standing within three or four feet of the track opposite the fire box of the engine, taking such location for the purpose of passing signals to other employees of his crew, and in doing so was performing the duties for which he was employed. He further alleges that both eyes were injured and the left eye to the extent that he has entirely lost the use of it; that his right eye has been impaired to the extent of about 20 per cent.; that he has suffered great pain because of the fumes and injuries and was forced to procure medical attention, and still suffers pain in his eyes and suffers great anxiety and worry for fear he will lose the sight of his right eye due to the weakened condition of the nerves, muscles, and other portions of his eyes, all of which are the result of the injuries received; that because of the injuries he is unable to secure a position as a railroad employee, and his earning capacity has been impaired to the extent of 75 per cent. He prays for damages in the sum of $25,000.

The appellant railway company answering, after a general demurrer and a general denial, alleged that at the time of the accident appellee and appellant were engaged in interstate commerce, wherefore the rights of the parties were controlled by the Federal Employers' Liability Act (45 USCA §§ 51–59).

The appellant further set up assumed risk, contributory negligence on the part of the appellee, and pleaded that appellee made an application for employment on the 31st day of March, 1925, as switchman; prerequisite to his employment he was called upon to state his prior employment; that at the time he made such application he knew he had theretofore been discharged as an employee of the Southern Pacific at El Paso, upon the ground that he had defective vision and was colorblind; that he purposely omitted to state in his application that he had worked for the Southern Pacific Company, knowing that such prior employment would be investigated, and that it would be ascertained that his vision was defective, and that the representations made in his application were false and fraudulent and made for the purpose of misleading appellant, and by reason of such fraud he was not entitled to the benefits of the Federal Employers' Liability Act and not entitled to recover.

The appellant further specifically alleged that the condition of plaintiff's eyes was not the result of any negligence on the part of appellant or its employees, but was due to the fact that appellee was suffering with syphilis and other ailments.

The case was tried to a jury and the court refused to direct a verdict for appellant. In response to special issues the jury found that, at the time of the accident, the fuel oil of the engine contained water, which caused an explosion in the fire box of the engine, and that allowing water in the fuel oil constituted negligence resulting in injuries to appellee's eyes, and that such negligence was the proximate cause of the damages; that the appellant failed to exercise ordinary care in providing reasonably safe and suitable fuel oil for the engine, which was a proximate cause of appellee's injuries; that he was damaged in the sum of $500, and that the loss of plaintiff's sight was due principally to syphilis or some other disease; and that appellee had not assumed the risk. From a judgment for appellee in the sum of $500, the railway has appealed.

The case is submitted here upon four propositions in which it is contended in substance that, because appellee secured employment by means of fraud and deception, without which he would never have been employed by appellant, the relationship of employer and employee, essential to a recovery, never existed under the Federal Employers' Liability Act; that because appellant and appellee were engaged in interstate commerce, the rights of the parties are governed by the Federal Employers' Liability Act and the construction of said act by the federal courts; that under said act, as construed by the federal courts, the burden is upon plaintiff to make out his case by substantial evidence, and that there is no such evidence tending to show that appellee received injuries as the result of an explosion or as the result of negligence on the part of appellant; and that the court erred in refusing to direct a verdict for appellant.

We deem it unnecessary to consider more than one question in this case, and that is the issue raised relative to the fraud perpetrated by appellee in answering the questions propounded to him in the application which he made to appellant for employment. He stated that he had never been discharged

or suspended from any situation; that from December 31, 1923, to August 21, 1924, he was employed by E. C. Day in a fuel camp in Arizona. He further stated that his eyesight was good, and that he was able to distinguish colors; that he had never made an application for employment and been rejected when subjected to physical examination. He testified, by deposition, that every time he had made an application for work to railroads he had passed a physical examination and had never failed to pass the vision test. He admitted that in August, 1924, he was found to be color-blind by the physical examination conducted in behalf of the Southern Pacific Company, and for that reason was discharged by that company. He was not discharged, however, until he had been examined by two different doctors working for the company.

With reference to his statement as to employment by E. C. Day, he said: "I stated in this application that I was employed, in order to account for my time, by E. C. Day as a coal salesman, covering the period of time that I just now testified that I worked at El Paso. I put that in my application because I wanted my application to stand up, and I am not color blind. I wrote E. C. Day at Winslow, Arizona, and had him write a letter to the Ft. Worth & Denver Railway Company. Mr. Covington, with the Denver here, wrote to Mr. Day and Mr. Day falsified for me and sent a letter to the Ft. Worth & Denver Railway Company, stating that I worked for him as a fuel salesman there."

R. M. Hoover, an employee of the Southern Pacific Company, for that purpose testified that he assisted in conducting a test of the appellee in August, 1924, with reference to color-blindness. His testimony shows that appellee was thoroughly tested and was found to be color-blind, and that it was necessary for a switchman to know colors because he comes in contact with them and could not get along without being able to distinguish colors.

The appellee's own testimony convicts him of perpetrating a fraud upon the railway company in order to secure employment, and the record is further clear to the effect that he would not have been employed but for his fraudulent representation.

■■ This suit being brought under the Federal Employers' Liability Act, and because the record shows that, as a switchman, appellee was continually engaged in interstate commerce, the decision of the Supreme Court of the United States, upon the question involved, will control whenever there is a conflict between such decision and the decision of state courts. M., K. & T. Railway Co. v. Jordan (Tex. Civ. App.) 2 S.W.(2d) 312; H. & T. C. Railway Co. v. Robins (Tex. Civ. App.) 23 S.W.(2d) 461; T. & P. Railway Co. v. Gibson (Tex. Com. App.) 288 S. W. 823;

Sears v. T. & N. O. Railway Co. (Tex. Com. App.) 266 S. W. 400.

Although there are decisions in Texas holding that fraud practiced by an employee in seeking employment is no defense to an action by the employee for damages that are sustained, the Federal Employers' Liability Act was not involved and such decisions were rendered prior to any definite pronouncement by the Supreme Court of the United States upon such a state of facts.

In N. O. & N. E. Railway Company v. Harris, 246 U. S. 367, 38 S. Ct. 535, 536, 62 L. Ed. 1167, the Supreme Court said: "In proceedings brought under the federal Employers' Liability Act rights and obligations depend upon it and applicable principles of common law as interpreted and applied in federal courts."

In Minneapolis Railway Company v. Rock, 279 U. S. 410, 49 S. Ct. 363, 365, 73 L. Ed. 766, the Supreme Court passed upon the rights of an employee who had secured employment by fraudulent means. Rock, the appellee in that case, knowing that he could not stand the physical examination as a switchman in the petitioner's yards, after making the application, procured one Lenhart to impersonate him and in his stead to submit to the required examination and in that way secured employment. In his suit for personal injuries against the railway company, he was denied a recovery by the Supreme Court. The court said:

"Since the decision of this court in the Second Employers' Liability Cases, 223 U. S. 1, 48, 51, 32 S. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, it has been well understood that the protection of interstate commerce and the safety of those employed therein have direct relation to the public interests which Congress by that act intended to promote. Philadelphia B. & W. R. Co. v. Schubert, 224 U. S. 603, 614, 32 S. Ct. 589, 56 L. Ed. 911; Watson v. St. Louis, I. M. & S. R. Co. (C. C.) 169 F. 942, 950. And see McNamara v. Washington Terminal Co., 37 App. D. C. 384, 393.

"The carriers owe a duty to their patrons as well as to those engaged in the operation of their railroads to take care to employ only those who are careful and competent to do the work assigned to them and to exclude the unfit from their service. The enforcement of the act is calculated to stimulate them to proper performance of that duty. Petitioner had a right to require applicants for work on its railroad to pass appropriate physical examinations. Respondent's physical condition was an adequate cause for the rejection of his application. The deception by which he subsequently secured employment set at naught the carrier's reasonable rule and practice established to promote the safety of employees and to protect commerce. It was directly opposed to the public interest, because calculated to embarrass and hinder the car-

rier in the performance of its duties and to defeat important purposes sought to be advanced by the act. * * *

"Respondent's position as employee is essential to his right to recover under the act. He in fact performed the work of a switchman for petitioner, but he was not of right its employee, within the meaning of the act. He obtained and held his place through fraudulent means. While his physical condition was not a cause of his injuries, it did have direct relation to the propriety of admitting him to such employment. It was at all times his duty to disclose his identity and physical condition to petitioner. His failure so to do was a continuing wrong in the nature of a cheat. The misrepresentation and injury may not be regarded as unrelated contemporary facts. As a result of his concealment his status was at all times wrongful, a fraud upon the petitioner, and a peril to its patrons and its other employees. Right to recover may not justly or reasonably be rested on a foundation so abhorrent to public policy. Railroad Company v. Lockwood, supra [17 Wall. 357, 21 L. Ed. 627]; Great Northern Ry. v. Wiles, 240 U. S. 444, 448, 36 S. Ct. 406, 60 L. Ed. 732; Stafford v. Baltimore & Ohio R. R. Co. (D. C.) 262 F. 807."

In such case there is a want of mutuality, and the minds of the parties have never met. A contract of employment obtained by fraudulent representation as to the age of a minor employee has been treated as a nullity, and the minor has been held to be a mere trespasser, for the purpose of relieving the employer from liability for negligence. Norfolk & Western Ry. Co. v. Bondurant, 107 Va. 515, 59 S. E. 1091, 15 L. R. A. (N. S.) 443, 122 Am. St. Rep. 867.

The appellee contends that, because the appellant railway company made an independent investigation relative to the facts stated in the application, it did not rely upon the appellee's representations, and cannot therefore complain. The record shows that he was tested with reference to his ability to distinguish colors and was accepted twice. It also shows that the appellant wrote Day for a verification of appellee's statement that he had been employed by Day and its first letter was not answered. In reply to its second letter, Day, under the instructions of appellee, disarmed appellant by false statement that appellee had worked for him, so the rule contended for by appellee does not apply.

The general rule is that fraud of this character renders a contract voidable rather than void, but that rule has been ignored in the Rock Case by the Supreme Court upon the ground that the safety of the traveling public is involved in a contract of this character, and for reasons of public policy it is held that the contract is void and, in effect, that

appellee never became an employee of the appellant. The parties are not in pari delicto, and the false representations made are material. The fact that the two vision tests made by the appellant failed to disclose colorblindness becomes immaterial in the light of this record, which shows that appellee resorted to positive and affirmative fraud in inducing Day to write false statements with reference to appellee's employment. Being guilty according to his own testimony, of positive and affirmative fraud and deceit with reference to a matter affecting the public interest, he has no standing in a court of law or equity.

We are strongly inclined to the opinion that the loss of vision in defendant's eye was due to disease, and that the proof is overwhelming upon this issue, but do not base the decision upon that ground. In deference to the holding of the Supreme Court of the United States, which we feel constrained to follow, the judgment is reversed and is here rendered for the appellant.

Reversed and rendered.