No. 40,586

VERNON O. WHITE, *Appellee*, v. GUY A. THOMPSON, Trustee, Missouri Pacific Railroad Company, *Appellant*.

(312 P. 2d 612)

Opinion filed June 8, 1957.

*Ralph M. Hope,* of Wichita, argued the cause, and *Leo Armstrong* and *Paul Armstrong,* of Columbus, *W. F. Lilleston, George C. Spradling, Henry V. Gott, George Stallwitz, Richard W. Stavely* and *Charles S. Lindberg,* of Wichita, were with him on the briefs for appellant.

*William L. Fry,* of Wichita, argued the cause, and *Joe L. Henbest,* of Columbus, *Payne H. Ratner, Louise Mattox, Payne H. Ratner, Jr., Russell Cranmer, Dale B. Stinson, Jr., Cliff W. Ratner, A. Wayne Murphy, Bernard V. Borst, D. Clifford Allison* and *Gerald D. Lasswell,* of Wichita, were with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: Plaintiff instituted this action against the defendant under the Federal Employers' Liability Act (45 U. S. C. A., §§ 51-59) to recover damages for personal injuries alleged to have been sustained on two separate occasions as a machinist inspector in defendant's diesel shop at Osawatomie, Kansas. The first injury is alleged to have occurred June 30, 1954, when plaintiff fell into an opening in the subfloor of the cab of a diesel locomotive and the second injury is alleged to have occurred January 23, 1955, when plaintiff slipped on ice on the concrete surface adjacent to defendant's diesel locomotive washrack.

Defendant's amended answer in addition to containing a general denial, alleged negligence on the part of plaintiff, and contained the following allegations:

"Further Answering, defendant alleges that plaintiff commenced working for defendant on the 10th day of January, 1951, after having signed and filed with defendant an Application for Employment on January 9, 1951. Said

Application for Employment contained a number of considerations and conditions of employment of plaintiff by defendant which were specifically accepted by plaintiff, among which was the following agreement and condition:

" '4. That any misrepresentation or concealment of facts by me in this statement or in my statements to the medical examiner respecting my age, physical condition past or present, qualifications, personal character, and record with former employers shall be just cause for my rejection or dismissal from service.'

"Defendant alleges that in said Application for Employment and in plaintiff's statements to defendant's medical examiner plaintiff misrepresented and concealed a number of facts respecting his past and present physical condition at that time and his records with former employers by giving false answers to questions contained in said Application for Employment and questions asked him by said medical examiner.

"Plaintiff stated in said Application for Employment that he was employed by Mueller Implement Company of Independence, Missouri, only during the period from 1937 to 1941. Plaintiff further stated in said Application for Employment that the only injury other than minor cuts and bruises which he had ever sustained was a broken ankle and that he had never filed a claim for damages because of any injuries, and stated to Dr. A. L. Speer, defendant's medical examiner who examined plaintiff at said time, that he had never suffered from a serious injury, although he also stated to said medical examiner that he had fractured his left ankle in 1945 and had had no trouble since that time.

"Defendant further alleges that said statements so made in said application and so made to said medical examiner were false and untrue and were made with the intent to deceive and defraud defendant; that in truth and in fact plaintiff was also employed by Mueller Implement Company from January, 1948, to January, 1949, and during plaintiff's employment by said company from January, 1948 to January, 1949, plaintiff fractured the index finger and the middle finger of one of his hands while engaged in said employment, upon which he filed a claim and for which he received compensation payments as a result and in settlement thereof; and that in truth and in fact while plaintiff was an employee of The Santa Fe Trail Transportation Company from March, 1941, to March, 1947, he sustained the following injuries while engaged in said employment and upon which he filed claims and received compensation as follows: May 30, 1942, back sprain, for which he received compensation and medical payments of $55.07; January 28, 1943, inhalation of carbon monoxide gas, for which he received compensation and medical payments of $50.11; June 17, 1943, fracture of left ankle, for which he received compensation and medical payments of $291.50; August 31, 1945, bruised right elbow, for which he received medical payments of $8.00; September 3, 1946, sprained right knee, for which he received a compromise settlement of $864.30.

"Defendant further alleges that defendant and his agents and medical examiner relied upon said false and fraudulent statements made by plaintiff in said Application for Employment and made to defendant's said medical examiner and by reason thereof gave plaintiff employment, and that if defendant had known of plaintiff's previous injuries while employed by said Mueller

Implement Company and said Santa Fe Trail Transportation Company, he would not have employed plaintiff as physically qualified for employment by defendant, nor would he have employed plaintiff because of plaintiff's obvious proneness to have accidents, as shown by said numerous injuries sustained by him.

"By reason of all of the foregoing plaintiff is not and was not at any time referred to in plaintiff's petition an employee of defendant within the meaning, or entitled to the protection, of the Federal Employers' Liability Act, is not entitled to maintain this action under the provisions of said act, and is not entitled to recover herein."

Plaintiff moved to strike that portion of the amended answer quoted above on the ground that it failed to state a defense under the Federal Employers' Liability Act and that it was incompetent, irrelevant, immaterial, surplusage, prejudicial and a conclusion. The trial court sustained the motion to strike for reasons asserted in the motion, and the defendant has appealed from that order.

In considering defendant's specification of error that the trial court erred in sustaining plaintiff's motion to strike that part of the amended answer quoted above, we note the rule that an order sustaining a motion to strike an affirmative defense pleaded in an answer and involving the merits of an action is tantamount to the sustaining of a demurrer and is an appealable order (*Whitlaw v. Insurance Co.*, 86 Kan. 826, 122 Pac. 1039; *Grain Co. v. Co-operative Association*, 109 Kan. 293, 198 Pac. 964; *Wigton v. Donnelly*, 122 Kan. 796, 253 Pac. 400; *Miller v. Whistler*, 153 Kan. 329, 110 P. 2d 744; *In re Estate of Reed*, 157 Kan. 602, 142 P. 2d 824.) Further, that a motion to strike an affirmative defense pleaded in an answer and involving the merits of an action will be denied if the defense is sufficient as a matter of law (*Small v. Small*, 107 Kan. 122, 190 Pac. 623; *Stafford v. City of Coffeyville*, 161 Kan. 311, 168 P. 2d 91), and, for the purpose of a decision on a motion to strike such defense as insufficient in law, well pleaded allegations will be accepted as true. *Stinson v. Wooster*, 83 Kan. 753, 112 Pac. 610; *Phillips v. City of Wichita*, 128 Kan. 411, 278 Pac. 2; *Sedan State Bank v. Stephenson*, 150 Kan. 210, 92 P. 2d 1; *Preston v. Shields*, 159 Kan. 575, 156 P. 2d 543.)

The defendant contends that because of plaintiff's false statements and misrepresentations in his application for employment and to the medical examiner, he never became an employee of defendant within the meaning of the Federal Employers' Liability Act and accordingly, is not entitled to the protection of the act and cannot maintain an action thereunder to recover for the injuries alleged to

have been sustained, and cites and relies upon *Minneapolis &c. R. Co. v. Rock* (1929), 279 U.S. 410, 49 S. Ct. 363, 73 L. Ed. 766; rehearing denied 50 S. Ct. 79, 73 L. Ed. 767, footnote 1; *Minneapolis, Etc., R. Co. v. Borum* (1932), 286 U. S. 447, 52 S. Ct. 612, 76 L. Ed. 1218; *Southern Pac. Co. v. Libbey* (1952), 199 F. 2d 341; *Fort Worth & D. C. Ry. Co. v. Griffith* (1930), Court of Civil Appeals of Texas, Amarillo, 27 S. W. 2d 351; *Talarowski v. Pennsylvania Railroad Company* (1955), 135 F. Supp. 503; *Clark v. Union Pac. R. Co.* (1949), 70 Idaho 70, 211 P. 2d 402.

In view of our conclusions later stated, we shall make an extensive review of the authorities cited by defendant, since the complaint is not that the stricken allegations would permit proof of causal relation between the alleged injuries and prior injuries or afflictions of the plaintiff, but rather, that they would permit proof of a retroactive dissolution of the relation of master and servant, or, to restate the last clause, they would permit proof that such relation never existed with respect to the Federal Employers' Liability Act.

The defendant relies chiefly on *Minneapolis &c. R. Co. v. Rock*, supra. In that case Joe Rock made application for employment as a switchman. He underwent a physical examination by the company physician. He had previously been treated for ulcers of the stomach, his appendix had been removed, he had a hernia, and he was rejected for employment. He then applied under the name of John Rock and procured another man to represent himself to be John Rock, who successfully passed the physical examination and was accepted as an employee. Joe Rock went to work under the assumed name, and was later injured. The Supreme Court of the United States held that Joe Rock was an imposter; that he was not the man for whose services the carrier had contracted; that he had never taken a physical examination and never became an employee of the carrier; that the concealment of his identity and the procurement of another to impersonate him to take the physical examination constituted gross fraud, which was continuing; and, that at no time was he entitled to the protection or benefit of the Federal Employers' Liability Act and that he could not recover thereunder.

Four years later the case of *Minneapolis, Etc., R. Co. v. Borum*, supra, was presented to the Supreme Court of the United States. In that case, when the plaintiff made application for employment he was 49 years old and understood the railroad did not employ men over 45 years old to work in its train service. He falsely stated in

his application for employment that he was 38 years old and when submitting to a physical examination, again misrepresented his age. His statement was relied upon by the examining physician and was in part the basis for the physician's finding and report that plaintiff was in good health and acceptable physical condition. At the time plaintiff was injured he was under the age of retirement. It was conceded that neither his age nor his physical condition contributed to his injury. The same eminent jurist who prepared the opinion in the Rock case, *supra*, wrote the Borum case, *supra*, and in commenting upon the force and effect of the Rock case and the reasons upon which that decision rested, stated:

"In *Minneapolis, St. P. & S. S. M. Ry. Co. v. Rock, supra*, this Court held that one who obtained employment as a switchman for an interstate carrier by railroad by fraudulently evading the company's *rule requiring applicants to submit to a physical examination* and who suffered injury in the course of employment in interstate transportation, *while the company remained unaware of the deception*, was not as of right an employee within the meaning, or entitled to the protection, of the Federal Employers Liability Act, and could not maintain an action for injury under that statute." (Emphasis supplied.) (p. 449.)

Notwithstanding Borum's false statements, the court concluded he was an employee of the railroad within the meaning of the Federal Employers' Liability Act and that his misrepresentations did not have a material bearing upon his physical condition nor did they substantially affect the examining physician's conclusion that he was in good health and acceptable physical condition. It was held the rule announced in the Rock case was inapplicable.

In *Talarowski v. Pennsylvania Railway Co.*, supra, the plaintiff filed a motion to strike the defendant's affirmative defense in which it was alleged that the plaintiff signed and filed an application for employment with the defendant in which he certified that all questions asked therein were answered truthfully; that plaintiff's answers with respect to his *medical history* and *physical condition* were knowingly false and were made by him with intent to deceive and defraud the defendant; that the defendant's examining physician relied upon the false answers of plaintiff and by reason thereof plaintiff was employed; and, that if the defendant had known of plaintiff's previous injury while he was employed by the Delaware Power and Light Company, it would not have employed him as physically qualified. The United States District Court held that the allegations of the affirmative defense summarized above were

legally sufficient, but that whether the alleged false statements were made with intent to misrepresent and commit a fraud upon the defendant, or were answers to misunderstood questions, were matters not susceptible of decision on a motion to strike; further, that whether the defendant relied upon the false statements and would not have employed the plaintiff if it had known the truth about the prior injury, was likewise not susceptible of decision by a motion to strike and the court overruled the motion.

In *Southern Pac. Co. v. Libbey,* supra, Libbey made written application for employment with the defendant in which he stated he had never been injured; that he had never received a pension or disability rating from the government or any organization, and that he had never been confined to a hospital for surgical operation or following an injury. The examining physician noted signs of injury on his left thigh, and there was evidence from which the jury might have inferred Libbey informed the doctor the scars and deformities were the result of a fracture during early childhood. Libbey joined the Marine Corps in 1941 and while serving on Guadalcanal in October, 1943, he was struck by shrapnel, which shattered the femur of his left leg. Bits of bone were removed and he was hospitalized until Christmas of 1944. He was on crutches when he was discharged from the Marine Corps in August, 1945, with a 70 percent disability rating, which was reduced in August, 1950, to 35 percent. In 1947 he was employed as a seaman in the Army Transportation Corps and fell from one deck to another deck of a vessel and fractured the knee of the previously injured leg, which resulted in an extended period of hospitalization. As a result of the knee injury, he had trouble bending his knee. In August, 1948, he fractured his left wrist in an automobile accident and was hospitalized for six weeks and did not work until February, 1949, when he applied for employment with Southern Pacific Company. He was later injured when he jumped from the cab of a locomotive and in trying to protect his injured left leg, threw all of his weight on the right leg and a fracture resulted.

At the trial the doctor who gave Libbey the physical examination upon his application for employment with defendant, was asked the question which in substance was whether, if he had known the facts concealed by Libbey's false answers, he would have passed Libbey for employment. An objection to the question was sustained and the offered testimony was excluded. The

circuit court reversed, holding that the materiality of Libbey's mis-representations was manifest and that had the rejected testimony been received, the jury might well have found the existence of causal relation between the fraud and the injury, and that under such circumstances the company was entitled to prove that its medical officer acted in reliance upon Libbey's false statements.

The case of *Fort Worth & D. C. Ry. Co. v. Griffith,* supra, involved an injury to the plaintiff's eyes. Griffith, in his application for employment, falsely stated that he had never been discharged or suspended from any employment; that his eyesight was good; that he was able to distinguish colors; that he had never been rejected for employment when subjected to physical examination, and that from December, 1923, to August, 1924, he was employed by one Day in Arizona. In August, 1924, Griffith was found to be color-blind by a physical examination conducted on behalf of the Southern Pacific Company and for that reason was discharged by that company. Griffith admitted that because he wanted his application for employment to stand up, he induced Day to write a false letter to the defendant stating that he had been in Day's employ in Arizona during the period of time he had worked for Southern Pacific. It was held that Griffith had perpetrated a fraud upon the defendant; that there was a want of mutuality, since the minds of the parties had never met; that by inducing Day to write false statements with respect to his employment, he had resorted to positive and affirmative fraud and was not therefore entitled to the protection of the Federal Employers' Liability Act.

In *Clark v. Union Pac. R. Co.,* supra, plaintiff was employed by the railroad as a brakeman and when attempting to board a moving oil car, the grabiron and sill step were loose on one side and gave away and tended to let him slip under the moving car. To avoid such an injury he threw himself backward, fell from the car, and struck his head on a rail of the adjoining track. The defendant claimed plaintiff was not an employee under the Federal Employers' Liability Act since he had admitted he made false and deceptive statements with respect to his physical condition. The examining physician testified that if the plaintiff had informed him he was afflicted with epilepsy he would not have recommended him for employment, it being conceded that unless a person afflicted with epilepsy so states or is seen in a seizure, no diagnosis will disclose it. The trial court instructed the jury that the plaintiff's

employment at the time of the injury was such as to bring him within the provisions of the federal act. The Supreme Court of Idaho reversed, holding that the issue of whether plaintiff's deception so entered into the contract of employment as to vitiate it should have been presented to the jury under separate instructions as to whether the false or deceptive statements affected the factum of the contract or whether there was causal relation between plaintiff's concealed infirmity and the accident.

With the possible exception of the Talarowski case, we think inherent in the holdings of the authorities cited by the defendant, that to terminate the relation of master and servant upon the ground of misrepresentations, the misrepresentations must be of such character to substantially affect the examining physician's conclusion that the employee was in good health and acceptable physical condition at the time of his physical examination and that a causal relation exists between them and the injury sustained by the employee in the performance of his duties. Such holdings are in harmony with other decisions hereafter noted.

Although fully cognizant that the decisions of the Supreme Court of the United States are controlling as to the interpretation and effect of the Federal Employers' Liability Act (*Schaefer v. Lowden,* 147 Kan. 520, 78 P. 2d 48), we think the majority of the decided cases, both federal and state, support the rule that misrepresentations in an application for employment with an interstate carrier do not render the contract of employment void so as to preclude recovery under the Federal Employers' Liability Act for negligent injuries inflicted upon him, where the employee was found to be in good health and acceptable physical condition at the time of his physical examination and the misrepresentations had no causal relation to the applicant's fitness to perform the duties required of him and to the injuries he sustained, notwithstanding they may render the contract voidable and form the basis for its rescission by a dismissal of the employee (*Payne v. Dougherty,* 8 Cir. 1922, 283 F. 353; *Minneapolis, Etc., R. Co. v. Borum* [1932] supra; *Dawson v. T. & P. Ry. Co.* [1934], 123 Tex. 191, 70 S. W. 2d 392 [from which petition to the Supreme Court of the United States for writ of *certiorari* was denied October, 1934, 293 U. S. 580, 55 S. Ct. 110, 79 L. Ed. 677]; *T. & N. O. R. R. Co. v. Webster* [1934], 123 Tex. 197, 70 S. W. 2d 394 [from which petition to the Supreme Court of the United States for writ of *certiorari* was denied October, 1934,

293 U. S. 580, 55 S. Ct. 93, 79 L. Ed. 677, rehearing denied November, 1934, 293 U. S. 630, 55 S. Ct. 138, 79 L. Ed. 716]; *Kansas City, M. & O. Ry. Co. of Texas v. Estes*, Court of Civil Appeals of Texas [1918], 203 S. W. 1155; *Qualls v. Atchison etc. Ry. Co.* [1931], 112 Cal. App. 7, 296 Pac. 645; *Newkirk v. L. A. Junction Ry. Co.* [1942], 21 Cal. 2d 308, 131 P. 2d 535; *Southern Pac. Co. v. Libbey* [1952], supra; *Matthews v. A. T. & S. F. Ry.*, 54 Cal. App. 2d 549, 129 P. 2d 435; *Phillips v. Southern Pacific Co.* [1936], 14 Cal. App. 2d 454, 58 P. 2d 688; *Clark v. Union Pac. R. Co.*, supra; *Laughter v. Powell* [1941], 219 N. C. 689, 14 S. E. [2d] 826, 136 A. L. R. 1116; 56 C. J. S., Master and Servant, § 180, pp. 872, 873; 35 Am. Jur., Master and Servant, § 402, p. 824 [p. 60, 1956 Cumulative Supplement]). See, also, the following cases in which the Federal Employers' Liability Act was not involved: *Williams v. Illinois Central R. Co.* (1905), 114 La. 13, 37 So. 992; *Matlock v. Railroad* (1906), 198 Mo. 495, 95 S. W. 849, 115 Am. St. Rep. 481; *Galveston, H. & S. A. Ry. Co. v. Harris* (1908), 48 Tex. Civ. App. 434, 107 S. W. 108; *Lupher v. Railway Co.* (1910), 81 Kan. 585, 106 Pac. 284, 25 L. R. A. (n. s.) 707; *Hart v. N. Y. C. & H. R. R. R. Co.*, 205 NY 317, 98 N. E. 493; *Brown v. Railway Co.* (1919), 104 Kan. 505, 180 Pac. 211; *L. & N. R. Co. v. Lewis* (1927), 218 Ky. 197, 291 S. W. 401; and, *Baker v. Beattie* (1920), (Court of Civil Appeals of Texas) 222 S. W. 658.

In *Dawson v. T. & P. Ry. Co.*, supra, Mr. Justice Pierson delivered the opinion of the Supreme Court of Texas, and said:

"The fact that he concealed his employment by the Texas Midland Railroad Company, and concealed that he had been injured while in its service and had filed a suit against it, if seasonably applied might have been a ground for cancelling his contract of employment with defendant in error, but would be insufficient to render it void or to terminate the relation of master and servant. 39 Corpus Juris, p. 276, sec. 401. As such employee and while in the full discharge of his duties, he could not be deprived of the protection of the law or of his right to recover for unlawful or negligent injuries inflicted upon him." (p. 194.)

In *Newkirk v. L. A. Junction Ry. Co.*, supra, the Supreme Court of California, through Mr. Justice Carter, said:

". . . Where employment is induced by fraudulent representations of the employee not going to the *factum* of the contract the employment exists although there may be ground for rescinding the contract, and recovery may be had from the employer for negligent injury to the employee at least where there is no causal connection between the injury and the misrepresentation. . ." (p. 320.)

In *Phillips v. Southern Pac. Co.*, supra, Mr. Justice Gould said:

"In the present case there appears to be no causal connection between the false statements in appellant's application for employment and the injury which forms the basis of his claim for damages. If in fact respondent's negligence was the proximate cause of the accident, it should not be absolved from blame upon the claim that because of appellant's false statements in procuring employment he was in fact not an employee, where, as here, there was no showing that there was a causal connection between the false representations and the accident. At the most the question of causal connection was a question of fact for submission to the jury." (p. 458.)

The principal question presented for appellate review is: Did plaintiff's misrepresentations render the contract of employment void, or merely voidable at the option of the defendant? In light of the principles enunciated in the foregoing authorities, we think that the contract was not void, and that at most it was only voidable which may have formed a basis for its rescission and authorized plaintiff's dismissal, but, while the relation of master and servant continued it imposed a duty upon the defendant to refrain from injuring plaintiff by its negligence, and in the event of injury, entitled him to the protection of the Federal Employers' Liability Act.

An examination of the amended answer discloses that defendant attempts to plead within the rule enunciated in the authorities above set forth by alleging that plaintiff misrepresented and concealed facts respecting his past and present *physical condition,* however, no further allegation is made to describe their nature or character, or their relation to his physical fitness at the time of his employment and we are forced to conclude that such allegation pertains solely to injuries received during previous employment, which in the form and manner alleged, show no relation to his physical fitness to perform the duties of employment, or to the subsequent injuries alleged to have been sustained. The general purport of the stricken allegations is that plaintiff, with intent to defraud and deceive the defendant, concealed injuries received during previous employment with Mueller Implement Company from January, 1948, to January, 1949, where he fractured two fingers on one hand and was compensated, and with The Santa Fe Trail Transportation Company from March, 1941, to March, 1947, where he sprained his back, inhaled carbon monoxide gas, fractured his left ankle, bruised his right elbow and sprained his right knee for which he was compensated, and that had the defendant known of such injuries, it would not have employed him as physi-

cally qualified because of his obvious proneness to have accidents; and, that the plaintiff was not an employee of the defendant within the meaning of the Federal Employers' Liability Act and not entitled to maintain the present action.

The defendant contends that the amended answer alleged causal relation between the misrepresentations and plaintiff's injuries because of his dubious physical condition and obvious proneness to have accidents. The contention lacks merit. It is obvious plaintiff concealed his previous injuries, but it is not alleged that they rendered him physically unfit and unacceptable for employment, or in what respect they were related to the injuries sustained. In the absence of such allegations, we conclude there was no causal relation alleged in the amended answer which would permit the introduction of evidence to relate the misrepresentations to the injuries sustained. Consequently, the question of causal relation did not exist for submission to the jury.

One of the principal reasons an applicant for employment with an interstate carrier is required to submit to a physical examination is to permit the carrier to ascertain his physical condition and determine his fitness to perform the duties of his employment. Plaintiff submitted to a physical examination and was approved by the medical examiner for employment by the defendant. At that time plaintiff advised the medical examiner of his fractured left ankle and stated it did not trouble him, but he concealed the fact he had sprained his back in 1942, inhaled carbon monoxide gas in 1943, bruised an elbow in 1945, sprained a knee in 1946, and broke two fingers in 1948, for which he received compensation and/or medical payments. It seems obvious that those injuries which occurred three, five, six, eight and nine years prior to his physical examination would not be manifest to the medical examiner, and unless there inhered in them some physical defect which was undetectible, they would not have affected the examiner's conclusion that he was in acceptable physical condition. But, defendant did not allege those injuries resulted in undiscovered physical defects or that the misrepresentations substantially affected the medical examiner's conclusion that he was in good health and acceptable physical condition on January 10, 1951. Neither is it alleged that his employment was inconsistent with defendant's policy or its reasonable rules "to employ only those who are careful and com-

petent to do the work assigned to them and exclude the unfit from service" (*Minneapolis &c. R. Co. v. Rock,* supra).

In view of the allegations in the amended answer, or the lack of them, we are compelled to conclude the medical examiner found plaintiff to be in good health and in every way physically fit to perform the duties of his employment, otherwise, he would not have approved plaintiff as physically fit for employment by the defendant. That being the case, plaintiff entered the employ of the defendant as a machinist inspector, which constituted a contract of employment even though voidable, and the relation of master and servant was created which continued over a period of three and one-half years, and until plaintiff's injuries. In view of the rule heretofore set forth, the defendant, as long as that relation existed, was obligated to exercise the same degree of care for plaintiff's protection as it was required to exercise on behalf of any other employee entitled to the benefits of the Federal Employers' Liability Act.

One reason which convinces us beyond doubt that the motion to strike was properly sustained is that it was incumbent upon the defendant to affirmatively plead it remained unaware of plaintiff's misrepresentations prior to his injuries to allege a defense sufficient in law that the misrepresentations so entered into the contract of employment as to vitiate it under the Federal Employers' Liability Act (*Minneapolis, etc., R. Co. v. Borum,* supra), and no such allegation was made. We think this view is substantiated by paragraph 4 of the application for employment, which provided that misrepresentations "shall be just cause for my rejection *or dismissal from service.*" On the basis of that application form, the defendant could, upon the discovery of the misrepresentations, dismiss the plaintiff, and would be required to do so within a reasonable time after discovery of the deceit, or ratify the voidable contract and permit the employment to continue. Otherwise, if the defendant ascertained plaintiff's misrepresentations prior to injury, it could pursue a policy of "lay and wait" until injury occurred, and then assert the misrepresentations as a defense under the federal act.

We conclude the trial court was justified in sustaining the motion to strike the allegations of the amended answer quoted above. As previously indicated, it is not alleged the misrepresentations had causal relation to plaintiff's fitness to perform his duties and to the

injuries he sustained, or that they substantially affected the medical examiner's conclusion that plaintiff was in good health and acceptable physical condition, or that defendant remained unaware of the deception until after plaintiff's injuries. These are necessary allegations to permit proof of a defense sufficient in law to defeat plaintiff's present action.

The judgment is affirmed.